**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| THAI QUOC TRUONG,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>TODD M. LYONS, et al.,<br><br>　　　　　Respondents. | Case No. EDCV 26-0021-AS<br><br><br>**ORDER GRANTING PETITION** |

**INTRODUCTION**

On January 5, 2026, Petitioner Thai Quoc Truong ("Petitioner"), an immigration detainee who is in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility in this District, and is represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), with supporting exhibits, claiming that he is entitled to release from custody because he was detained without sufficient process and his removal to Vietnam is not reasonably foreseeable. (Dkt. No. 1).

The Petition was accompanied by a motion for a temporary restraining order ("TRO") seeking Petitioner's immediate release from ICE custody,[1] which Respondents opposed. (Dkt. Nos. 2, 11). On February 2, 2026, the District Judge denied Petitioner's TRO motion due to Petitioner's failure to demonstrate a likelihood of success on the merits.[2] (Dkt. No. 14). On February 12, 2026, Petitioner filed a motion for reconsideration of the order denying the TRO motion, which the District Judge subsequently denied on procedural grounds, without prejudice to renewal if properly presented. (Dkt. Nos. 17, 24).

At a hearing before the District Judge on February 20, 2026, the parties consented on the record to proceed before a United States Magistrate Judge. (See Dkt. Nos. 24, 27). On March 6, 2026, Respondents filed an Anwer to the Petition, along with a supporting

---

[1] The motion was denied without prejudice on procedural grounds on January 6, 2026, and Petitioner filed a renewed TRO motion on January 22, 2026. (Dkt. Nos. 6, 7).

[2] At a hearing before the District Judge a few days earlier, on January 30, 2026, the government failed to appear, so the District Judge ordered the government to file a declaration stating why an order to show cause should not be issued for the failure to appear. (See Dkt. No. 13). Additionally, the parties were ordered to meet and confer to discuss whether the Petition should be denied in light of the Court's tentative ruling denying the TRO motion, and they were required to then file responses addressing that matter. (Id.). On February 13, 2026, a status conference was held before the District Judge, who noted that the government failed to appear and also had failed to file its response regarding dismissal. (Dkt. No. 19). The government was ordered to show cause why sanctions should not be imposed. (Id.). The government subsequently responded, hearings were held on the matter, and the District Judge discharged the order to show cause. (See Dkt. Nos. 22, 24, 26, 28).

2

declaration of deportation officer Cane L. Langill ("Langill Decl.") and exhibits. (Dkt. No. 29). On March 13, 2026, Petitioner filed a Reply in support of the Petition, along with a renewed motion for reconsideration of the order denying his TRO motion.[3] (Dkt. Nos. 30, 31).

For the reasons stated below, the Court grants the Petition, orders Respondents to immediately release Petitioner under the same conditions to which he was subject prior to his re-detention, and enjoins and restrains Respondents from re-detaining Petitioner without compliance with 8 C.F.R. § 241.4(*l*)(1) and § 241.13(i).

**BACKGROUND**

Petitioner, a native of Vietnam, entered the United States as a refugee in 1975, at the age of two, and became a lawful permanent resident the following year. (Petition ¶¶ 13–15). He is married to a U.S. citizen and has three U.S. citizen children. (Id. ¶ 23). In 1994, Petitioner was convicted of conspiracy to commit grand theft in violation of California Penal Code sections 182 and 487(a) and sentenced to 270 days in jail. (Langill Decl. ¶ 6). In 1996, Petitioner was convicted of two counts of residential robbery in violation of California Penal Code sections 211 and 213 and sentenced to seven years in prison. (Petition ¶ 18; Langill Decl. ¶ 7).

---

[3] As indicated below, Petitioner's renewed motion for reconsideration is denied as moot.

3

On February 21, 2001, immigration authorities served Petitioner with a Notice to Appear, commencing removal proceedings under 8 U.S.C. § 1229a, on the grounds that Petitioner was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for being convicted of an aggravated felony after admission. (Langill Decl. ¶ 8). Following the completion of his state sentence, Petitioner was transferred to immigration custody on March 22, 2001. (Langill Decl. ¶ 9). On April 10, 2001, an immigration judge ordered Petitioner's removal. (Langill Decl. ¶ 10). As Petitioner waived appeal, that removal order is final. (Id.). Five months later, on September 20, 2001, stating that Petitioner's removal did not appear "reasonably foreseeable at this time," the government released him from custody and placed him under an order of supervision. (Petition ¶ 22, Ex. 5; Langill Decl. ¶ 11).

On December 16, 2025, Petitioner was arrested and taken into ICE custody during a regularly scheduled check-in appointment. (Petition ¶ 25). He was served that day with a Warrant of Removal/Deportation (Form 1-205), authorizing his detention and notifying him that the U.S. Department of Homeland Security ("DHS") intended to execute his final removal order and process him for removal to Vietnam. (Langill Decl. ¶ 13). He was also served with a notice of revocation of release, informing him that "there is a significant likelihood of removal in the reasonably foreseeable future" based on "changed circumstances." (Langill Decl. ¶ 14, Ex. A). That same day, an immigration officer conducted an initial informal interview "to afford [Petitioner] an opportunity to respond to the reasons for revocation" of his supervised release.

4

(Langill Decl. ¶ 15, Ex. B). Petitioner did not provide a statement. (Id.).

On January 8, 2026, ICE Enforcement and Removal Operations ("ERO") Los Angeles Field Office submitted a request for Petitioner's travel document to ERO Removal and International Operation ("RIO"), which then forwarded the request to the Vietnamese government. (Langill Decl. ¶ 16). RIO provides guidance and assistance to ERO field offices attempting to obtain travel documents to foreign nationals who are subject to a final order of removal. (Langill Decl. ¶ 17). RIO directly collaborates with embassies and consulates to facilitate the removal of aliens that have been ordered removed from the United States. (Id.). ICE and the U.S. Department of State routinely work with the Government of Vietnam to issue travel documents necessary to effectuate the removal of aliens to Vietnam. (Langill Decl. ¶ 18). The government of Vietnam has issued travel documents on a regular basis. (Id.). The request for Petitioner's travel document is pending with the Vietnamese government. (Langill Decl. ¶ 19). When Respondents' Answer was filed, the request for a travel document had been pending for almost sixty days, which according to the government "is still within the expected timeframe, although it [was] coming near the end of what is typical in this context." (Langill Decl. ¶ 20). The Vietnamese government has not indicated that there are any issues with the travel document request. (Id.). ICE "anticipates that the travel document will be issued imminently and that ICE will be able to effectuate Petitioner's removal to Vietnam in the foreseeable future." (Id.).

**APPLICABLE LAW**

Petitioner is currently being detained under 8 U.S.C. § 1231(a), which "governs the detention, release, and removal of individuals 'ordered removed.'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Under Section 1231(a), the Attorney General is directed to remove aliens subject to final orders of removal within ninety days (the "removal period"), and is further directed to detain such aliens during the removal period. 8 U.S.C. § 1231(a)(1-2); Arteaga-Martinez, 596 U.S. at 578. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); Clark v. Martinez, 543 U.S. 371, 377 (2005); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" (citations omitted)). Petitioner falls within at least one of these categories. See 8 U.S.C. § 1231(a)(6) ("An alien ordered removed

6

who is . . . removable under section . . . 1227(a)(2) . . . of this title . . . may be detained beyond the removal period[.]").

"Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." Arteaga-Martinez, 596 U.S. at 579. But in Zadvydas, the Supreme Court "applied the canon of constitutional avoidance and determined that 'read in light of the Constitution's demands,' § 1231(a)(6) 'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" Arteaga-Martinez, 596 U.S. at 579 (quoting Zadvydas, 533 U.S. at 689). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 689; Martinez, 543 U.S. at 378. "[T]he presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Martinez, 543 U.S. at 378 (quoting Zadvydas, 533 U.S. at 701). In other words, the "6-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Zadvydas "places the burden on the alien to show, after a detention period of six months, that

7

there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting Zadvydas, 533 U.S. at 701).  If that burden is met, "the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701.

Once released from custody, a noncitizen subject to a final order of removal must comply with certain conditions of release. See 8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.4(l)(1) and § 241.13(i). Under § 241.13(i), re-detention of an individual, such as Petitioner, who was previously released from custody because removal was not in the reasonably foreseeable future, is permitted (1) if the noncitizen "violates any of the conditions of release," id. §§ 241.13(i)(1), 241.4(l)(1); or (2) if, "on account of changed circumstances," ICE determines "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," id. § 241.13(i)(2). As to the latter determination, § 241.13(f) instructs ICE to consider "all the facts of the case," including the following factors:

> the history of the [noncitizen's] efforts to comply with the order of removal, the history of [DHS's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [DHS's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the

8

reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. 241.13(f); see also Hoac v. Becerra, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025) ("The plain language of § 241.13(i)(2), does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred. Instead, to the extent ICE claims that it made such a determination, the court should review that claim in light of the factors set out in 8 C.F.R. § 241.13(f), 'instructing ICE on how it should make such a determination.'" (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025))).

The regulations also establish "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and receive an "initial informal interview promptly" after being detained, to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." Id. "Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the

basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." Tiraturian v. Bondi, 2025 WL 4061565, at *2 (C.D. Cal. Dec. 8, 2025).

The government is required to follow these revocation procedures, and the failure to do so renders a detainee's re-detention unlawful. See Nguyen v. Noem, -- F. Supp. 3d --, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025) ("A growing number of courts — including this one — have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release."); Morales Sanchez v. Bondi, 2025 WL 3651899, at *3 (C.D. Cal. Dec. 5, 2025) ("[T]he Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process."); Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); Delkash v. Noem, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures . . . renders the re-detention unlawful." (collecting cases)).

**DISCUSSION**

Petitioner merits immediate release from ICE custody because Respondents failed to provide adequate notice or to demonstrate sufficient grounds to re-detain him on December 16, 2025, and Petitioner's removal is reasonably foreseeable.[4]

First, as Petitioner contends, the "Notice of Revocation of Release" that the government served him — after they re-detained him — failed to provide him with any specific facts regarding the basis for his re-detention. (See Reply at 8). Instead, the Notice stated:

> [Y]our order of supervision has been revoked and you will be detained in the custody of [ICE] at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case. ICE has determined there is a significant likelihood of removal in the

___

[4] Respondents assert that the Court lacks jurisdiction over Petitioner's claims to the extent that he challenges the government's decisions to "commence proceedings, adjudicate cases, or execute removal orders" against him. (Answer at 10-11 (quoting **Error! Main Document Only.**Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482-83 (1999)) (emphases in Reno)); see 8 U.S.C. § 1252(g). **Error! Main Document Only.**The Supreme Court has made clear that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions, but instead refers "to just those three specific actions themselves." Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) (citing Reno, 525 U.S. at 482-83)). None of the relief granted in this Order concerns any challenge barred by § 1252(g).

reasonably foreseeable future. [¶] ICE has determined that you can be removed from the United States pursuant to the outstanding [April 10, 2001] order of removal against you. . . . ICE has determined it is appropriate to enforce the removal order and remove you to Vietnam.

(Langill Decl., Ex. B (served on Petitioner at the Santa Ana Federal Building)). Nowhere does the Notice specify on what facts ICE based its finding that there were "changed circumstances" or that his removal was significantly likely in the "reasonably foreseeable future." "Courts in this district, circuit, and across the country have held that such a vague, generic statement is insufficient notice." Nguyen v. Noem, -- F. Supp. 3d --, 2025 WL 3898489, at *6 (collecting cases); see also, e.g., Vardumyan v. Noem, 2026 WL 530759, at *3 (C.D. Cal. Feb. 20, 2026) ("[T]he generic language in the Notice of Revocation issued to Petitioner merely states that ICE has determined a 'significant likelihood of removal in the near future,' without specifying changed circumstances or providing any factual support. Such language has been found to be procedurally deficient and noncompliant with § 241.13(i)(2)." (citing Morales Sanchez v. Bondi, 2025 WL 3651899, at *5 (C.D. Cal. Dec. 5, 2025))); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3).").

12

Moreover, Respondents still have not identified any "changed circumstances" regarding Petitioner's removability that reasonably would have merited this finding. Respondents allege that a request for Petitioner's travel documents was sent to Vietnam on January 8, 2026 (see Answer at 1, 3; Langill Decl. ¶ 19), which was more than three weeks after ICE re-detained Petitioner and served the Notice of Revocation, so logically it cannot have been the "changed circumstances" that ICE claimed to have found. See also Vardumyan, 2026 WL 530759, at *4 (government's request for travel documents made after revocation of release did not constitute "changed circumstances" to justify revocation at the time the revocation occurred); Shameyan v. Bondi, 2026 WL 330684, at *5 (C.D. Cal. Feb. 5, 2026) (same); Uzzhina v. Chestnut, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) (same). Respondents also vaguely reference that a policy change had occurred at some point since Petitioner's prior detention in 2001 (see Answer at 1-2, 8), but they give no indication that this happened around the time when ICE served the Notice of Revocation claiming to have found "changed circumstances."[5]

---

[5] As noted further below, this change in policy was apparently due, at least in part, to a 2020 "Memorandum of Understanding" between the United States and Vietnam, which provides a process through which the Vietnamese government could consider pre-1995 Vietnamese immigrants for removal. See 2020 Memorandum of Understanding between [DHS] and the Ministry of Public Security of the Socialist Republic of Vietnam § 8(3), (4) (November 21, 2020), https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf ("2020 MOU"). Respondents do not mention the 2020 Memorandum in their Answer. But if this was the only change that preceded Petitioner's December 2025 re-detention, Respondents fail to explain why five years later it justified a finding of changed circumstances regarding Petitioner's

13

More to the point, Respondents have failed to support their determination that Petitioner's removal to Vietnam was (or is) significantly likely in the "reasonably foreseeable future." Although Respondents assert that under Zadvydas the burden is on Petitioner to show that his removal is not reasonably foreseeable (Answer at 3-5), the burden is on the government when it revokes release to effectuate removal, under 8 C.F.R. § 241.13(i)(2). See, e.g., Espada v. Doe, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026) ("'[T]he burden-shifting framework from Zadvydas does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released on an' [order of supervision]." (quoting Yan-Ling X. v. Lyons, -- F. Supp. 3d --, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025))), report and recommendation adopted, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]").

Additionally, as Petitioner notes (see Reply at 2-3), he has now been detained beyond Zadvydas's presumptively reasonable period of six months because, consistent with a majority of district courts, the Court counts the length of his current detention (more

removability. See also Nguyen v. Hyde, 788 F. Supp. 3d at 151 (noting that ICE did not "identify what changed circumstance occurred during the approximately five-year gap between issuance of the 2020 MOU and Petitioner's detention on May 21, 2025, that now make it significantly likely [Petitioner] will be removed to Vietnam").

14

than three months) along with the length of his previous post-removal-order detention between April 10 and September 20, 2001 (more than five months). See Jaranow v. Bondi, -- F. Supp. 3d --, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) ("Courts in this Circuit have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas." (collecting cases)); Ton v. Noem, 2025 WL 4058327, at *5 (C.D. Cal. Dec. 22, 2025) ("Based on the Court's own research, other Districts in the Ninth Circuit and throughout the country consider time in detention in the aggregate when applying the presumption from Zadvydas, even when there are intervening periods of decades." (collecting cases)); Phan v. Warden of Otay Mesa Det. Facility, -- F. Supp. 3d --, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) ("[M]ost courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them." (quoting Siguenza v. Moniz, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025)) (collecting cases)). Under Zadvydas, therefore, Petitioner's detention is no longer authorized under § 1231(a) if Petitioner shows there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and Respondents fail to rebut that showing. Zadvydas, 533 U.S. at 701.

Respondents argue that Petitioner's continued detention is warranted because "DHS intends to remove" him "and his travel documents remain pending for active consideration by Vietnam[] and

are expected to be issued shortly." (Answer at 6 (citing Langill Decl. ¶¶ 19-22)). As noted above, the request for Petitioner's travel documents was apparently sent to the Vietnamese government on or about January 8, 2026. (Langill Decl. ¶ 16). Petitioner contends that Respondents' assertions do not suffice, as they amount to no more than "speculation that the Vietnamese government <u>might</u> in the future issue travel documents that may render a removal attempt successful." (Reply at 3). He argues that his removal remains unlikely because Vietnamese natives who, like him, entered the United States as refugees before 1995 "have historically presented substantial barriers to repatriation because Vietnam often does not recognize them as citizens or declines to issue travel documents." (Reply at 6).

Respondents assert that Vietnam's policy has changed, and "[p]re-1995 Vietnamese immigrants are now routinely removed to Vietnam." (Answer at 1, 4). To show this, they cite three habeas cases in this district that were mooted by the removal of the Vietnamese petitioners.[6] (Answer at 6 (citing <u>Huynh v. Semaia</u>, Case

___

[6] As noted above, this change in policy was apparently due, at least in part, to a 2020 "Memorandum of Understanding" (or MOU) between the U.S. and Vietnam. <u>See</u> 2020 MOU, https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf. The 2020 MOU provides that within thirty days of a request for travel documents, the travel document should be issued, or the individual should be notified that it is insufficient. <u>Id.</u> §§ 8(3), (4). But even if Petitioner is removable under the 2020 MOU, "Vietnam has total discretion whether to accept particular non-citizens[,] so the 2020 [MOU] is insufficient on its own to show a significant likelihood of removal." <u>Pham v. Noem</u>, 2025 WL 3763374, at *4 n.3 (C.D. Cal. Dec. 22, 2025) (citing <u>Nguyen v. Hyde</u>, 788 F. Supp. 3d at 151; <u>Hoac</u>, 2025 WL 1993771, at *4; <u>Vu v. Noem</u>, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025)).

No. CV 24-10901-MRA (DFM); Minh v. DHS, Case No. EDCV 25-02245-HDV (JDE); Vo v. DHS, Case No. EDCV 25-02791-SVW (MBK))). However, "beyond this anecdotal evidence, the government provides no statistics regarding how often it is requesting and receiving travel documents from Vietnam, and no information about whether the people for whom it is receiving those documents are relevantly similar to [Petitioner]." Nguyen v. Noem, -- F. Supp. 3d --, 2025 WL 3898489, at *4. Respondents thus fail to show a likelihood that Petitioner will have a similar outcome. See also Ton, 2025 WL 4058327, at *6 ("Evidence that one person has recently been repatriated, in a vacuum, does little to support the Government's position without supporting evidence of the percentage of travel document requests for pre-1995 Vietnamese immigrants that are approved or why [petitioner's] request for travel documents is similarly situated to Huynh's in relevant respects."); Hoac, 2025 WL 1993771, at *5 ("Respondents' reliance on [a] single case does not aid the court's analysis. . . . Vietnam has discretion whether to issue a travel document to any individual. The petitioner's removal to Vietnam in [another case] merely demonstrates that on one occasion, an individual was repatriated from the United States to Vietnam.").

"As other courts have noted, 'the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted' and appears to depend on personalized historical and biographical data." Ton, 2025 WL 4058327, at *6 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 722-23 (W.D. Wash. 2025)). As such, the mere fact that a request for Petitioner's

17

travel documents was sent to Vietnam on January 8 is not enough to show that Petitioner's removal is reasonably foreseeable. See, e.g., Hung v. Marin, 2026 WL 712220, at *5 (C.D. Cal. Mar. 5, 2026) (government's recent request to Vietnam for travel documents was insufficient to satisfy its burden to establish that removal was reasonably foreseeable); Ton, 2025 WL 4058327, at *5 ("The mere request for travel documents [from Vietnam] that the Government believes will issue within 30 days is not enough to rebut the presumption in this context."); Tran v. Scott, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025) (evidence that travel document had been requested was insufficient where there was no data about the proportion of other pre-1995 Vietnamese immigrants for whom travel document requests were successful).

Accordingly, as other courts have concluded in similar circumstances, Petitioner is entitled to release from custody among other relief sought in the Petition. See, e.g., Hung, 2026 WL 712220, at *8; Ton, 2025 WL 4058327, at *8; Nguyen v. Noem, -- F. Supp. 3d --, 2025 WL 3898489, at *8; Tran, 2025 WL 2898638, at *5.

**ORDER**

For the reasons discussed above, IT IS ORDERED that (1) the Petition is GRANTED; (2) Respondents shall immediately release Petitioner under the same conditions to which he was subject prior to his re-detention; (3) Respondents are enjoined and restrained from re-detaining Petitioner without compliance with 8 C.F.R. § 241.4(*l*)(1) and § 241.13(i); and (4) Petitioner's renewed motion

18

for reconsideration of the denial of TRO (Dkt. No. 31) is DENIED as moot. Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order on counsel for Petitioner and counsel for Respondents.

DATED: March 20, 2026

_____/s/_____
ALKA  SAGAR
UNITED STATES MAGISTRATE JUDGE

19